IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

- - -

UNITED STATES OF AMERICA   )   Criminal No. 98-13 Erie
                      )
     vs.              )
                      )
MICHAEL POINDEXTER       )

- - -

Transcript of:  Sentencing hearing.

Date:  August 19, 1999.

Before:  Maurice B. Cohill, Jr., U.S. District Judge

Reporter:  Colvin Vogel, Official Reporter
1031 U.S. Courthouse
Pittsburgh, PA  15219
(412) 261-4095

<u>APPEARANCES</u>

    JOHN TRUCILLA, Assistant U.S. Attorney, Suite 302, 100 State Street, Erie, PA  16507, appearing in behalf of the United States of America.

    WILLIAM F. SCARPITTI, JR., Suite 102, 150 W. 6th Street, Erie, PA  16501, appearing in behalf of the Defendant, Michael Poindexter.

- - -

PROCEEDINGS

**DEFENDANT'S EXHIBIT A**

```
 1   (August 19, 1999, 10:00 a.m.)

 2        (In chambers.)

 3             MR. TRUCILLA:   The government is here in the

 4   matter of the U. S. of America versus Michael Poindexter in

 5   the presence of Trooper Taylor who's a state trooper who

 6   works primarily narcotics, works with the tactical narcotics

 7   investigation units, and he primarily supervised

 8   Mr. Poindexter.

 9             And the reason we are here, Your Honor, is because

10   I wanted to further explore in specific detail the

11   cooperation provided by Mr. Poindexter so we can make an

12   assessment as to his cooperation.  And I think, Your

13   Honor -- and I think Mr. Scarpitti would agree -- that we

14   have a pretty serious guideline range here.  And I think out

15   of an abundance of caution we are going to show deference to

16   Mr. Poindexter and go forward with this motion.

17             So to that end let me have the trooper sworn so we

18   can ask him some questions.

19        (Trooper John Taylor sworn.)

20   BY MR. TRUCILLA:

21   Q.   State your full name.

22   A.   John Taylor, Pennsylvania State Police.

23   Q.   How long have you worked for the Pennsylvania State

24   Police?

25   A.   Approximately six and half years.
```

1    Q.   Have you, Trooper, dealt in any particular area of

2    investigation during these six and a half years?

3    A.   For the past three and a half years I have been an

4    undercover trooper.

5    Q.   Have you involved yourself with undercover operations

6    involving the illegal sale of cocaine?

7    A.   Yes, sir, I have.

8    Q.   And in the course of that experience have you come in

9    contact with an individual by the name of Michael

10   Poindexter?

11   A.   Yes, sir, I have.

12   Q.   Was that down in the Franklin, Pennsylvania, area?

13   A.   Yes, sir.

14   Q.   Is that an area you primarily work right now?

15   A.   Yes, sir, Venango County.

16   Q.   For lack of better vernacular, you got to know the

17   players, so to speak, that were involved in the trade of

18   selling cocaine in that area?

19   A.   Yes.

20   Q.   Once this investigation was handled and Mr. Poindexter

21   came in and pled guilty, did you have any contact with him

22   regarding information, or at least the understanding that he

23   wanted to cooperate with law enforcement officials?

24   A.   Yes, sir.

25   Q.   Why don't you take it from there and explore with the

1  court the contacts you made with him, the information he

2  relayed to you, and what if anything he did to further this

3  agreement?

4  A.  Okay.  Mr. Poindexter during, I believe, approximately

5  the last 14 months -- initially there was no contact with

6  Mr. Poindexter at all.  In connection --

7          THE COURT:  You say for the last 14 months you

8  have not had contact?

9          THE WITNESS:  At the initial time, after

10  Mr. Poindexter was arrested, there was no contact with

11  Mr. Poindexter other than at one point in time we met with

12  Mr. Scarpitti in his office and he gave information on

13  individuals that I already knew about.

14          THE COURT:  Okay.

15  BY MR. TRUCILLA:

16  Q.  Let me ask you about that.  Let's go to that step one,

17  that meeting with Mr. Scarpitti.  Did you ask Mr. Poindexter

18  about various individuals that you had known or was it an

19  open-ended question basically saying tell me what you know,

20  or how did that come about?

21  A.  It would have went both ways there.  And Mr. Poindexter

22  was asked to help us with undercover buys, to make

23  controlled buys for us at that time and throughout that

24  period of time and up until today.  And Mr. Poindexter had

25  contacted me; he went to a rehab center for a while.  And

1   Mr. Scarpitti and myself also had phone conversations

2   concerning whether or not Mr. Poindexter would cooperate.

3   He had my pager number as well as Special Agent Gorham's

4   contact number.  I did talk to Mr. Poindexter a handful of

5   times.  And the information he gave me concerned actually

6   one drug dealer in  Venango County by the name Dubre Hoover.

7   What Mr. Poindexter stated to me was that he couldn't do

8   anything with Mr. Hoover.  The information I gave to him was

9   if there is a time when you want to do something, actually

10  help us out in our investigation, get in touch with me.

11  Mr. Poindexter never called me, never wanted to do anything.

12  And my perception -- he said that everybody thought that he

13  was, quote, a snitch, and nobody would get close to him.

14  And the only information that Mr. Poindexter gave to us that

15  was relevant was that he was actually subpoenaed to a trial

16  and he testified at the trial.

17          THE COURT:  Was that here?

18          MR. TRUCILLA:  No, this was down in Crawford

19  County.

20          THE WITNESS:  Excuse me.  It was Venango County

21  Court of Common Pleas.

22          MR. TRUCILLA:  I'm sorry.  Venango County.

23  BY MR. TRUCILLA:

24  Q.  Go ahead, Trooper.

25  A.  We chose to subpoena Mr. Poindexter because the opinion

1  of us was he wouldn't show up if we asked him to.  He

2  testified in that proceeding against an individual named

3  Kenneth Lamont Shariff (sp).

4  Q.  Was his testimony helpful?

5  A.  It was a conviction, yes.

6  Q.  Subsequent to that there, were any other debriefings or

7  any other information provided?

8  A.  I spoke to Mr. Poindexter that day during the trial and

9  again reiterated to him to contact me when you have

10  something or you want to do something.  And it wasn't much

11  later than that that Mr. Poindexter, from what I understand,

12  had a hot urinalysis, was told to come to Erie, and then

13  he took off.  He has actually been a fugitive.

14          THE COURT:  We didn't expect to have this today.

15  BY MR. TRUCILLA:

16  Q.  Let me ask you, in your years of experience working

17  undercover and doing cocaine transactions and other

18  controlled substances, have you dealt with individuals who

19  have agreed to cooperate with the government?

20  A.  Yes, sir.

21  Q.  Have you debriefed them?

22  A.  Yes.

23  Q.  And by comparison and contrast, can you make an

24  assessment as to the attitude expressed by Mr. Poindexter?

25  Was it enthusiastic?  What was your assessment of his

1    cooperation?

2    A.   My assessment of Mr. Poindexter's cooperation, it is

3    hard to assess it to a good degree.   I don't understand what

4    went through his mind, realizing the seriousness of his

5    fate.   And his assessment to me on a scale of one to ten it

6    would be a one.

7              THE COURT:   He has had a very checkered criminal

8    career, really.   I counted a lot of either convictions or

9    run-ins with the law in his presentence report.

10             MR. TRUCILLA:   Before I turn him over --

11   Mr. Scarpitti, do you want to ask him questions?

12             MR. SCARPITTI:   Yes, I think so.

13                         - - -

14   BY MR. SCARPITTI:

15   Q.   Trooper, Mr. Poindexter, when you first arrested him,

16   confessed right away, did he not?

17   A.   Oh, yes.

18   Q.   In fact, he gave you a background briefing basically in

19   that confession, did he not, as a drug dealer?

20   A.   Yes.

21   Q.   And when we met in my office in December, he again gave

22   you a background briefing as to drug dealing in the area in

23   which he lives, the Venango County, Oil City-Franklin area,

24   correct?

25   A.   Correct.

1    Q.   One of his fears he had expressed to you was a fear that

2    because he has a young child that if he were wired or

3    something like that that his family would be hurt; is that

4    correct?

5    A.   That was his assessment, yes.

6    Q.   Correct.   Right.   And after that he did testify in

7    Venango County in Common Pleas and was helpful in getting a

8    conviction in a drug case?

9    A.   I would say so, yes.

10   Q.   There have been some other occasions where he had some

11   conversations with you where he would say something like, "I

12   know the guy is going to go to Detroit to pick up drugs

13   today or tomorrow," didn't he, over the period of time?

14   A.   No, sir, I don't recall that.

15   Q.   June of -- I believe it might have taken place after

16   January of '99.

17   A.   I don't recall.   What I do recall about Detroit is that

18   Mr. Poindexter did advise us that he made a trip to Detroit

19   himself with another individual leaving the district, which

20   he wasn't supposed to do.   He never contacted us ahead of

21   time or anything.   And when I asked him if he thought that

22   they went to pick up drugs, his assessment was they might

23   have.   He was in the car with --

24   Q.   But he did make you aware of that and --

25   A.   After the fact.

1   Q.   -- of the individuals who were going to Detroit?

2   A.   Same individuals that he gave us the background on

3   before.   He didn't give a specific time frame that I can

4   recall though.

5   Q.   One of his problems was, didn't he say to you, that

6   people down there knew he had been arrested and thought he

7   was snitching, and a lot of his ability to be of any major

8   help to you had dried up?

9   A.   That was his assessment.   I take it as somebody who was

10   still using crack cocaine, that he was still using it, but

11   telling me he can't do anything.   That it is very

12   contradictory.

13   Q.   When he in your investigation -- would it be fair to say

14   that he is not a big drug player in terms of being a

15   big-time seller in the  Venango County area; he is more of a

16   person who was a street seller to get drugs for himself?

17   A.   That would be my assessment.

18   Q.   Small time?

19   A.   He might be more so for himself, for his habit, himself.

20   But in the same time he had such big connections that it is

21   hard to say exactly where he would fall into the spectrum.

22   Q.   In fact in the presentence -- did you read the

23   presentence?

24   A.   No, I didn't.

25   Q.   Subsequent to your initial meeting with the dealer who

1   sold you drugs that Mr. Poindexter introduced you to, there

2   is a series of conduct alleged between you and the dealer.

3   Basically Mr. Poindexter really played no role in that whole

4   transaction except to introduce you to the individual; isn't

5   that correct?  He wasn't present at any of the subsequent

6   incidents that you've related?

7   A.   No, he wasn't.  There was a reason for that.

8   Q.   Okay.

9              MR. SCARPITTI:  Judge, I have nothing further.

10             THE COURT:  At the very -- there is an addendum to

11  the presentence report that Ms. Henderson prepared here.

12  And it indicates that on October 29, 1998, he had appeared

13  in  Venango County Court of Common Pleas, and he was

14  permitted to withdraw a plea of guilty which he previously

15  entered.  Trial has been set in this matter for December 7,

16  1998.

17             MR. SCARPITTI:  He subsequently pled to that.

18             THE COURT:  What were the charges here?

19             MR. SCARPITTI:  I believe simple assault.

20             MR. TRUCILLA:  Yes.

21             THE COURT:  Okay.  Well, I can't think of anything

22  else I need to ask.

23             Are you going to say anything out there or have

24  the trooper testify?

25             MR. TRUCILLA:  I don't want to get into any more

1   specifics out there.  I think we explored it here.  Again,

2   this may be a better setting here.  I think you know that in

3   good faith the government brings this motion to the court.

4   It is not the best 5K, but I think it is something that

5   merits probably consideration by you.  And I think you know,

6   again, we are doing it out of deference to him.

7           MR. SCARPITTI:  My thrust would be that these

8   guidelines, in Congress' wisdom, just are so high that this

9   is not an individual who deserves that kind of

10  incarceration.

11          THE COURT:  But I'm concerned about his past

12  record.  He got this history of drinking, substance abuses,

13  history of substance abuse of one kind or another, and a

14  couple of assaults, and, you know, people get physical, and

15  I get worried.

16          MR. SCARPITTI:  If I could, this may be a good

17  time -- if you look at his prior record, though, judge, you

18  go back to age 18, and under state law that is the only

19  felony that we have, and it is a robbery, and that is a

20  purse snatching.  There are simple assaults in there, and

21  almost everything that this kid did -- well, he is a man

22  now.  I shouldn't call him a kid -- everything that

23  Mr. Poindexter did, almost everything was handled at the

24  district justice level.  And it would seem to me that the

25  seriousness of his incidents, except for the purse

1    snatching, and thank God the individual wasn't badly hurt in
2    the purse snatching, up until we get to this offense on a
3    scale, judge, are not all that serious, each and every one
4    of them alone. I would agree with the court that he has got
5    a checkered history from 18 on and being in front of the
6    system. I would think that probably Mr. Trucilla and
7    Officer Taylor would agree with me that it probably stems
8    from his abuse both of alcohol and of drugs.

9            THE COURT: Disorderly conduct type stuff.
10   Sometimes you never know. Here is drunk and disorderly, and
11   public drunkeness, age 26, in '94, after receiving -- the
12   police responded after receiving reports that Michael
13   Poindexter was outside in the street slapping Cindy Tarr in
14   the head. Cindy I think was his girlfriend or something.
15   That kind of thing can lead to serious injuries too, or
16   worse.

17           MR. TRUCILLA: You could look at it and the
18   question that just hits you in the face is when is he going
19   to grow up, when is he going to decide his kids and family
20   are more important. Mr. Scarpitti knows that a lot of the
21   problems he had on supervision was because of his addiction
22   to crack cocaine. He had a hot cocaine test. When you are
23   in that environment it can only lead to trouble, and that is
24   what he mixed himself up in.

25           THE COURT: I am going to consider the 5K too and

1   see where we go.

2            Are you going to have any testimony?

3            MR. SCARPITTI:  No, Your Honor.

4            THE COURT:  Thank you.

5       (Conclusion of conference in chambers.)

6       (In open court.)

7            THE COURT:  This is the time set for the

8   sentencing of Michael Anthony Poindexter.  And we note that

9   Mr. Poindexter and his attorney Mr. Scarpitti have signed

10  the notice indicating they have received a copy of and

11  reviewed the presentence report.  We will make that part of

12  the record.  If an appeal should be taken, of course,

13  counsel on appeal will be permitted access to the report.

14           There has been no information which was withheld

15  from the defendant which was given to the court.

16           There have been no objections filed to the

17  presentence report.

18           So we find initially that the appropriate offense

19  level is 34, and the criminal history category is Roman

20  numeral six.  Thus the applicable guideline range is 262 to

21  327 months of imprisonment.  Mr. Poindexter would be

22  ineligible for probation.  Supervised release of five years.

23  A fine in the range of 17,500 to 4,000,000 dollars.  And a

24  special assessment of 100 dollars.

25           The government has however presented a 5K1.1

1    motion based on certain cooperation which the government

2    received from Mr. Poindexter.  And we are taking that into

3    consideration.

4         Well, Mr. Scarpitti, at this time is there

5    anything you would wish to say or introduce any additional

6    testimony on behalf of your client?

7         MR. SCARPITTI:  As you know we had an

8    on-the-record discussion in chambers.  I won't repeat what I

9    said there.  The only thing I would point out to the court

10   is Mr. Poindexter has been a primary custodian for his young

11   son and has been so for a number of years.  He also lives

12   with his dad and he helps his dad.  His dad has arthritis

13   and diabetes, and has had hip replacement surgery.

14        It is a dichotomy, judge, no question.  He is a

15   very loving son and father who tried to take care of his

16   family.  There is also no question that if you look at his

17   past history, as I pointed out in chambers, under

18   Pennsylvania law only one would have been a felony.  That

19   was the purse snatching, age 18.

20        You can look at that history and you can see that

21   there was a problem of drugs and alcohol.  He was dependent.

22   And that has been the source of all the problems.  He is an

23   individual who admitted his guilt in all those past offenses

24   and never once took the Commonwealth to trial; that he has

25   always admitted his guilt, as in this proceeding.  He

1  cooperated with the authorities in terms of his admission

2  and his confession, background information, from day one.

3            And he now stands before you ready to be

4  sentenced.  We would ask the court to depart from the

5  guidelines, depart from the guidelines dramatically.  We

6  feel that this is an individual who in his illegal conduct

7  of selling, that he sells to get drugs, not to make a big

8  profit.  He is not a big money man.  He is not importing

9  them.  He sells so that he can use.  While it is

10 reprehensible, we know the court can take cognizance in that

11 basically it is a problem of his own alcohol and drug abuse.

12 We would ask the court to fashion a sentence which will

13 allow him to have the time to be rehabilitated to protect

14 society, but we don't feel, judge, with all respect, that

15 the guidelines -- the guidelines as they are given by the

16 sentencing commission certainly well exceed the point where

17 society has protection from Mr. Poindexter and well exceed

18 his role in the drug scheme in this case.

19            THE COURT:  Well thank you, Mr. Scarpitti.

20            Does Mr. Poindexter have anything he wishes to

21 say?

22            THE DEFENDANT:  I would just like to say I'm sorry

23 for the things that I have done.  I'm sorry for loosing

24 Trooper Taylor's trust and wasting their time.  I feel bad

25 about that.  And I would like to say I'm sorry to my father

1   and mother and my children.  I would like to say I'm sorry,

2   and really that is all.

3           THE COURT:  Thank you.

4           Mr. Trucilla, does the government have anything?

5           MR. TRUCILLA:  I want to say something real brief,

6   Your Honor.

7           What is somewhat troubling to me and Mr. Taylor,

8   you know, in that vein, and the drugs, that throughout the

9   course of this, and I think Mr. Scarpitti will agree, we

10  really went to every possible extent of deference to allow

11  Mr. Poindexter to take advantage of opportunities that were

12  afforded to him, various opportunities that were explored in

13  chambers.  And he is now 31 years old, and he has got to

14  wake up and understand that for 13 years he has been

15  involved in the adult criminal system in some form or

16  another.  Although as an isolated incident each one may look

17  petty or trivial, they are not.  He involves himself with

18  the wrong people and the wrong choices.  However, we have

19  made our motion, and we stand by it.  And I think the

20  guidelines will therefore accommodate for this activity.

21          THE COURT:  Thank you.

22          Well, the way I view this thing is because of the

23  number of offenses you've had, Mr. Poindexter, you are

24  designated under the guidelines here what they call a career

25  criminal.  That brings the guidelines up considerably.  As I

1   mentioned before, the guidelines, without any 5K motion,

2   they call for 262 to 327 months of imprisonment.  That is

3   because of the career criminal designation.

4           Now I'm concerned about the number of times it

5   looks like disorderly conduct, and it could have been a lot

6   more serious, and apparently you have done many things when

7   you were under the influence of alcohol and perhaps drugs.

8   And, well, it is fortunate that no one was seriously injured

9   in any of these incidents.  That possibility is always there

10  when you get grown-ups pushing each other around.

11          But I am going to consider the 5K motion filed by

12  the government.  And what I'm going to do, which I think is

13  fair to all concerned, is to eliminate the criminal career

14  designation.  Without that the guideline calls for a minimum

15  of 140 months.  And that is the sentence that we are going

16  to impose here.

17          Is there any reason that sentence should not be

18  imposed, Mr. Scarpitti?

19          MR. SCARPITTI:  Not that I know of, Your Honor.

20          THE COURT:  Mr. Poindexter?

21          THE DEFENDANT:  No.

22          THE COURT:  Mr. Trucilla?

23          MR. TRUCILLA:  My only question was -- I have

24  the presentence report, and I think technically he could not

25  max out -- he did not max out as a career offender.  He

1  wasn't a level six; he was a level five.

2           I want to talk to the probation officer here.

3       (Conference between Mr. Trucilla and Ms. Henderson.)

4           MR. TRUCILLA:  Your Honor, in response to your

5  question, there is not a reason why sentence should not be

6  imposed now.

7           THE COURT:  There was a third addendum to the

8  presentence report which called for -- roman numeral six.

9  That was based on the later trial he had down in  Venango

10  County, or where he had the trial.

11          Well, I think that is really immaterial as far as

12  the legality of the sentence is concerned.  I think in view

13  of all the circumstances here 140 months is a fair sentence,

14  and that is what we are going to do here.

15          Pursuant to the Sentencing Reform Act of 1984, it

16  is the judgment of the court that the defendant Michael

17  Anthony Poindexter is hereby committed to the custody of the

18  Bureau of Prisons to be imprisoned for a term of 140 months.

19          Upon release from imprisonment the defendant shall

20  be placed on supervised release for a term of five years.

21          Within 72 hours of release from the custody of the

22  Bureau of Prisons, the defendant shall report in person to

23  the probation office in the district to which the defendant

24  is released.  While on supervised release the defendant

25  shall not commit any federal, state or local crimes, shall

1    comply with the standard conditions of supervision that have
2    been recommended by the sentencing commission and adopted by
3    this court, and shall also comply with the following
4    additional conditions:

5          The defendant shall be prohibited from possessing
6    a firearm or destructive device.

7          The defendant shall not unlawfully possess a
8    controlled substance.

9          The defendant shall participate in a program of
10   testing and, if necessary, treatment for substance abuse as
11   directed by the probation officer until such time as the
12   defendant is released from the program by the probation
13   officer.

14         Further, the defendant shall be required to
15   contribute to the cost of services for any such treatment
16   not to exceed an amount determined reasonable by the
17   probation officer's sliding scale for substance abuse
18   treatment services.

19         The defendant shall submit one drug urinalysis
20   within 15 days after being placed on supervision and at
21   least four tests a year thereafter.

22         The court will waive a fine in this case due to
23   the defendant's inability to pay.

24         It is further ordered that the defendant shall pay
25   to the United States a special assessment of 100 dollars

1 | which shall be paid to the United States District Court
2 | Clerk forthwith.

3 |         Finally, it is further ordered that the defendant
4 | shall be taken into custody immediately.

5 |         The guideline range does exceed 24 months.

6 |         And the reasons for imposing the selected sentence
7 | are that we believe a sentence of 140 months based on a
8 | reduction because of the 5K motion by the government will
9 | adequately address the sentencing objectives of individual
10 | and general deterrence and punishment and protection of the
11 | community.

12 |         Mr. Poindexter, you have the right to appeal.  You
13 | are entitled to a lawyer at every stage of this proceeding.
14 | If you cannot afford an attorney, one will be provided for
15 | you without charge.

16 |         I think the government has a motion with respect
17 | to Count 2?

18 |         MR. TRUCILLA:  We will move to dismiss Count 2,
19 | Your Honor.

20 |         THE COURT:  We will grant that motion.

21 |         Court is adjourned.

22 |         MR. SCARPITTI:  Thank you, Your Honor.

23 |         (Whereupon at 10:45 a.m. the proceedings were
24 | concluded.)

25

1

2

3

4          I CERTIFY THE FOREGOING IS A CORRECT TRANSCRIPT

5    FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

6    MATTER.

7

8                              _____

9                              Colvin Vogel, Official Reporter
                               1319 Main Street
10                             W. Leechburg, PA   15656
                               (724) 845-4391
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25